In re the MARRIAGE OF Linda L. GEIL and William J. Geil.

Upon the Petition of Linda L. Geil, Appellee,

And Concerning William J. Geil, Appellant.

No. 92–1162.

Supreme Court of Iowa.

Dec. 22, 1993.

Gerald W. Crawford and J.D. Hartung of Crawford & Associates, Des Moines, for appellant.

Roger J. Kuhle of Law Office of Roger J. Kuhle, P.C., Des Moines, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

This is an appeal by the petitioner, William J. (Bill) Geil, from the economic provisions of a decree dissolving his marriage to respondent, Linda Geil. Bill contests the court's (1) division of property, (2) allocation of inherited property, (3) computation of child support, (4) allowance of alimony, (5) contingency provision regarding Bill's intent to file bankruptcy, and (6) order for attorney fees. With some modification, we affirm the judgment of the district court.

Bill and Linda were married in March 1973. Both are high school graduates. At the time of trial, Linda was employed as a customer service representative for a travel agency earning a net salary of $729 per month. Bill has worked for twelve years as a journeyman machinist for the Meredith Corporation. He earns approximately $2669 per month, including mandatory overtime pay. They are the parents of two teenaged children who, they agree, shall continue to reside with Linda in the family home, subject to liberal visitation with Bill.

The controversy centers on property inherited by Linda both before and during the marriage. She brought to the marriage the following assets: an undivided one-half interest in a 250–acre farm; certificates of deposit totaling $25,000; stocks and bonds worth $15,000; a one-twelfth interest in 5200 acres of land in Texas worth roughly $35,000; and a new car. During the marriage, Linda inherited another $60,000 from her grandmother plus jewelry valued at $2300.

Linda and Bill used the $25,000 CD to buy their first home and, upon its sale, to refurbish one of the two houses on the farm property for their residence. Linda's mother, who shares ownership of the property as a tenant in common, lives in the other home. The Geils' home is valued at approximately $65,000.

In the early 1980s Bill and Linda embarked on a farming venture that proved disastrous. Linda mortgaged her interest in the farm to finance the operation and their living expenses. The encumbrance eventually totaled $250,000. By the time of trial the debt had been reduced to $120,000 through the joint efforts of the parties and their families, including the application of Linda's $60,000 inheritance. It costs them approximately $14,000 per year to service the remaining debt. At trial Bill testified that he intended to discharge his obligation on the loan in bankruptcy, leaving Linda and her mother—who cosigned on the loan—responsible for the remaining indebtedness.

In its decree, the district court awarded Linda all her inherited property, all the household furnishings, two automobiles, one-half of Bill's $4000 cash savings, and one-half of Bill's pension and profit sharing plan. The court divided various consumer debts between the parties and ordered that each be responsible for one-half of the farm mortgage. Bill is required to pay $838 per month in child support and $200 per month alimony. The court also decreed that the support payments would be subject to modification if Bill filed bankruptcy to discharge the marital debts. Finally, the court awarded Linda attorney fees in the amount of $1630.

On Bill's appeal from this equitable action, our review is de novo. *In re Marriage of Bergfeld*, 465 N.W.2d 865, 868 (Iowa 1991). We are obliged to examine the entire record and adjudicate rights anew on the issues properly presented. *In re Marriage of Steenhoek*, 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the trial court's findings but are not bound by them. *Id.*

I. Bill makes an overall complaint that the court's property division so favors Linda that it is inequitable. On the face of it, one would be hard pressed to disagree. But the parties' disparate earnings and retirement

prospects, combined with the fact that Linda's inherited property has spawned as much debt as financial security, leads us to conclude that the district court's allocation of marital resources, with the adjustments described below, will result in substantial equity between the parties.

■ A. *Inherited property.* In setting aside to Linda all the property she inherited from her family both before and during the marriage, the district court honored the premise, embodied in Iowa Code section 598.-21(2) (1991), that such property is generally not subject to division. *In re Marriage of Thomas,* 319 N.W.2d 209, 210 (Iowa 1982). That premise must yield, however, "where its application would be unjust." *Id.; accord In re Marriage of Muelhaupt,* 439 N.W.2d 656, 659 (Iowa 1989). Pertinent factors bearing on the issue include the length of the marriage; contributions made by either party toward the property's care, preservation, or improvement; and the impact of the property on the parties' standard of living. *Id.* at 658–59; *In re Marriage of Wallace,* 315 N.W.2d 827, 831–32 (Iowa App.1981).

■ The court's refusal to divide the farm property is not surprising given Bill's equivocal attitude toward it. On the one hand he rightfully claims entitlement based on the fact that it provided the family's livelihood for many years and continues to be the family homestead. On the other hand, he seeks to distance himself from any financial obligations connected with it. He proposes giving Linda the farm outright in exchange for all the associated debt.

We believe that the farm, and its debt, are inextricably bound. Bill has devoted substantial time and effort to its production and maintenance. Nearly all of Linda's inheritance has been invested in it. Both committed themselves to substantial debt attempting to make it work. In fairness neither should be permitted to walk away from that ongoing responsibility.

Accordingly, we modify the decree to award Bill one-half of Linda's interest in the homestead and 250 acres, contingent upon Bill's annual payment of one-half of the remaining debt. If the debt is retired in accordance with this opinion, then Linda shall execute a quitclaim deed to Bill for the interest we hereby award him. If, on the other hand, Bill chooses to walk away from the debt, then he can make no claim to an interest in the property.

■ With respect to the remaining inherited property, we note that it has not provided a source of support during the marriage. Nor can Bill claim that he would suffer if some portion of it were not set aside to him. Thus we affirm the district court's awards with respect to the securities, jewelry, and land in Texas.

■ B. *Other marital property.* The court awarded Linda all the household goods and furnishings, and two vehicles with an aggregate value of $10,500. It awarded Bill two vehicles totaling approximately $250. It inadvertently awarded a $1500 truck to both parties. The truck is being driven by a child living with Linda. The court also divided Bill's cash savings of $4000 and the current value of his pension and profit sharing plan. It assigned one-third of the parties' joint debts (excluding the farm mortgage) to Linda, leaving Bill responsible for the remainder.

■ We find no inequity in this allocation of assets and liabilities. As the primary caretaker for the parties' two children, Linda has greater need for the household goods and dependable transportation. Because Linda remained in the home to care for the children during their formative years, she has not generated the earning capacity or retirement security that Bill enjoys. The court's allocation of debts fairly reflects the parties' financial ability to assume them. *See In re Marriage of Lacaeyse,* 461 N.W.2d 475, 477 (Iowa App.1990). Except for the $1500 truck, which we hereby award to Linda, we affirm the court's decree in all other respects on this issue.

It also appears that the court failed to make provision for a joint tax refund of $5135 currently in Linda's possession. She requests that it be divided equally between the parties and used to reduce the joint farm debt. We so order.

II. Bill contends that the court erred by including overtime pay in the computation of net monthly income for determining his child support obligation under the guidelines. His claim is without merit. In *In re Marriage of Brown,* 487 N.W.2d 331, 333 (Iowa 1992), this court held that overtime wages come within the definition of gross income used to calculate the proper award. Only when such overtime is speculative or uncertain, or where a parent is *forced* to work overtime to meet a burdensome child support obligation, may overtime pay be excluded from the guideline calculation. *Id.*

Here the record reveals that Bill has consistently worked overtime for the past seven years. He furnished no evidence that he works overtime solely to meet his support obligation. Indeed he testified that he would have no difficulty paying child support based on the court's calculation of his net monthly income, which included overtime. Although he asserts on appeal that the court overlooked evidence of a potential change in his employer's policy toward overtime work, at present no basis exists to depart from the award entered. *See In re Marriage of Lee,* 486 N.W.2d 302, 304 (Iowa 1992) (modification in child support award justified upon proof of substantial change in circumstances).

III. The district court awarded Linda $200 per month alimony, payable by Bill until Linda's death or remarriage. On appeal Bill claims the award is "inappropriate on its face and totally unsupported by the record." We do not agree.

Iowa Code section 598.21(3) lists a number of factors bearing on the suitability of alimony, including length of the marriage, the age and health of the parties, the parties' relative earning capacities, their levels of education, and the likelihood that the party seeking alimony will become self-supporting at a standard of living comparable to that enjoyed during the marriage. Alimony may be used to remedy inequities in a marriage and to compensate a spouse who leaves the marriage at a financial disadvantage. *In re Marriage of Earsa,* 480 N.W.2d 84, 86 (Iowa App.1991). It is a stipend paid in lieu of the other spouse's obligation for support. *In re Marriage of Wegner,* 434 N.W.2d 397, 398 (Iowa 1988). Following a marriage of long duration, we have affirmed awards of both alimony and substantially equal property distribution, especially where the disparity in earning capacity has been great. *In re Marriage of Hitchcock,* 309 N.W.2d 432, 438 (Iowa 1981).

Linda and Bill were married nearly nineteen years. By mutual agreement, Linda spent most of those years out of the work force. Consequently the disparity between their current and potential incomes is significant. Both testified that Linda alone will never be able to achieve the standard of living she enjoyed during the marriage. At the same time, Linda has witnessed a substantial erosion in the unencumbered assets she brought into the marriage. Thus we believe the modest alimony awarded by the court was an appropriate means of remedying the financial inequity created by the dissolution. No reversible error appears.

IV. Bill contends that the district court invaded the province of the federal bankruptcy court by providing for increased spousal support in the event he follows through on his threat to file bankruptcy. In its findings, the court said:

> In the event the Respondent files for bankruptcy resulting in the loss of the Petitioner's equity in the homestead, then Petitioner shall be entitled to an increase in alimony payments for as long a period of time as is necessary to compensate Petitioner for the loss of said equity, and all alimony payments due under the terms of this Decree shall then become a lien upon the estate of the Respondent.

But the decretal portion of the court's ruling said this:

> The property settlement and support obligation as set out herein, assume the payment of the parties' debt by Petitioner and Respondent. In the event of Respondent's failure to pay these debts or in the event of the Respondent's filing for bankruptcy, the child support and alimony payments shall be subject to modification upon application to the Court.

Taken together, we believe these provisions suggest that the court saw the farm debt issue as being as crucial to the question of support as to the division of property. But the dischargeable nature of these obligations will be for the bankruptcy court alone to decide. *In re Voss,* 20 B.R. 598, 601 (Bankr.N.D.Iowa). In reaching its decision, the bankruptcy court will look to federal, not state, law. *Id.*

The rights of the parties in state court are established by the court's decree, not its findings. *Matter of Quirk,* 504 N.W.2d 879, 881 (Iowa 1993). To the extent this decree prejudges Linda's right to a modification of child or spousal support based solely on Bill's filing for bankruptcy, the provision was ill advised and must be stricken. As already noted in this opinion, entitlement to a modification turns on proof of a substantial change in circumstances. *Lee,* 486 N.W.2d at 304. Future events will determine the parties' relative rights in this regard.

V. Bill's final complaint concerns the court's order that he pay $1630 toward Linda's attorney fees. The matter rests within the court's broad discretion. *In re Marriage of Giles,* 338 N.W.2d 544, 546 (Iowa App.1983). The test is whether the fee is reasonable and based on the parties' respective abilities to pay. *In re Marriage of Lattig,* 318 N.W.2d 811, 817 (Iowa App.1982). We will not generally disturb an award of fees unless the court's discretion has been abused.

Bill cannot meet that standard here. The record reveals that Bill earns four times what Linda earns every month. The assets she received through inheritance are not income generating and she is barely able to cover living expenses for herself and the children, even with Bill's help. No abuse of discretion has been shown.

Linda asks for an award of attorney fees on appeal. Again our decision is guided by the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). Based on this record and the outcome of the appeal, we order that each party pay his or her own counsel and that the costs be split equally between them.

**AFFIRMED AS MODIFIED.**