**In re MARRIAGE OF Terry K. TRICKEY and Benjamin J. Trickey.**

**Upon the Petition of**

**Terry K. Trickey, Petitioner–Appellee,**

**And Concerning**

**Benjamin J. Trickey, Respondent– Appellant.**

**No. 97–0594.**

Court of Appeals of Iowa.

Dec. 28, 1998.

Kevin J. Visser of Moyer & Bergman, P.L.C., Cedar Rapids, for appellant.

Sherry L. Schulte of White & Johnson, P.C., Cedar Rapids, for appellee.

Considered by SACKETT, C.J., and HUITINK, STREIT, VOGEL, and MAHAN, JJ.

VOGEL, J.

Respondent-appellant Benjamin J. Trickey ("B.J.") appeals a district court ruling modifying the parties' dissolution decree by increasing his alimony obligation from $1 to $1800 per month. We affirm as modified.

The marriage of B.J. and Terry Trickey was dissolved by decree on March 23, 1988. At the time, both parties were thirty-eight years old. Pursuant to stipulation, B.J. agreed to pay Terry $800 per month in alimony for a period of three years and then one dollar per year thereafter. He was also ordered to pay a property settlement of $2000 per month for thirty-six months. In addition, B.J. agreed to pay two lump-sum property settlements of $100,000 on September 1, 1991 and $50,000 on September 1, 1997.

B.J. owns a bowling business which was experiencing financial difficulties at the time of the decree. However, it was expected the business would host a bowling tournament in 1991 which would yield a substantial profit from which the first lump sum payment would be made.[1] The tournament was held, but the entire expected revenue was never realized. The business continued to face financial problems through 1995.

Initially, B.J. met his alimony, child support, and $2000 periodic property settlement obligations. However, in 1991, B.J. notified Terry he would not pay the $100,000 due on September 1. Terry subsequently allowed B.J. to meet his property settlement obligation through monthly installments of $2,800 per month. By 1993, however, B.J.'s financial situation had become desperate. Attempting to ease the impact of his lump sum property settlement obligations, he of-

---

1. The specific facts on this issue are in dispute. Terry testified during the modification hearing only the 1991 payment was expected to be derived from the tournament. B.J. argues on appeal both the 1991 and 1997 payments would derive from the tournament. After reviewing the record, we find the 1991 payment was directly connected to the 1991 tournament. The money for the 1997 payment appears to have been anticipated in light of the business's expected improved financial condition following the tournament.

·fered Terry one of the two bowling alleys he owned. She refused. B.J. also offered to convert the remainder of the property settlement to alimony, a non-dischargeable obligation. B.J. warned he might file bankruptcy and that the conversion would afford her greater protection. Terry refused his offer.

In 1995, B.J. filed Chapter 7 bankruptcy. The bankruptcy court ruled the $150,000 lump sum payments were dischargeable. As a result of the bankruptcy, B.J.'s IRA was liquidated and the net proceeds were distributed to Terry. The amount remaining unpaid on the property settlement, even though discharged by the bankruptcy court, became the focal point of Terry's modification action.[2]

From 1988 to 1996, Terry, a certified teacher, unsuccessfully sought full time teaching employment. Her employment was limited to substitute teaching and short term contracting. Her inability to find full time teaching positions was apparently due in large part to factors beyond her control, such as her age and lack of a teaching specialty. She applied for several other sales and clerical positions, but was routinely turned down. She rejected opportunities that offered only minimum wage income.

On March 14, 1996, Terry filed a modification petition. On subsequent hearing, she claimed the bankruptcy resulting in B.J.'s improved financial condition, coupled with her continued unemployment constituted a substantial change in circumstances justifying an increase in alimony. The trial court agreed and ordered B.J. to pay Terry alimony of $1800 per month for five years.

B.J. now appeals. He claims the district court erred in considering the bankruptcy a substantial change in circumstances justifying an increased alimony award. He further contends the district court cannot reinstate the discharged property settlement through the guise of a modified alimony award. B.J. also argues Terry's failure to procure a full time teaching job is not a substantial change in circumstances, since she was also unemployed at the time of the 1988 decree.

## I. Scope of Review.

Modification of dissolution decree actions are tried in equity and review is thus de novo. Iowa R.App.P. 4; *In re Marriage of Guyer*, 522 N.W.2d 818, 820 (Iowa 1994). At the same time, we recognize the value of listening to and observing the parties and witnesses. Iowa R.App.P. 14(f)(7). Consequently, we give weight to the findings of the trial court, although they are not binding. *In re Marriage of Ruter*, 564 N.W.2d 849, 851 (Iowa App.1997).

## II. Bankruptcy as Basis for Modification of Alimony.

Property division and alimony should be considered together in evaluating their individual sufficiency. *See In re Marriage of Tzortzoudakis*, 507 N.W.2d 183 (Iowa App.1993). However, once set, absent fraud, duress, coercion, mistake, or other similar grounds which would support modification of an ordinary judgment, property settlements in dissolution decrees are not subject to modification. *In re Marriage of Johnson*, 299 N.W.2d 466, 468 (Iowa 1980).

B.J. contends this modification action seeks to modify a property settlement, not an alimony award. The real issue is whether failure to pay a property settlement due to bankruptcy can be rectified through a modification of an alimony award.

Our consideration of this issue requires examination of federal bankruptcy law and Iowa dissolution and domestic relations law. Normally, state family law is not preempted by federal law. *See Rose v. Rose*, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033, 95 L.Ed.2d 599 (1987) (quoting *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 852–53, 34 L.Ed. 500 (1890)). However, state law will be preempted if it "conflicts with the express terms of federal law" and "sufficiently injure[s] the objectives of [a] federal program." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 583, 99 S.Ct. 802, 809, 59 L.Ed.2d 1 (1979). To be overridden, the state law "must do 'major damage' to 'clear and substantial' federal interests." *Rose v. Rose*, 481 U.S. at 625, 107

2. There is a dispute as to how much of the property settlement was actually paid before B.J.

filed bankruptcy. This conflict need not be resolved in light of our decision today.

S.Ct. at 2033, 95 L.Ed.2d 599 (quoting *Hisquierdo v. Hisquierdo,* 439 U.S. at 581, 99 S.Ct. at 808, 59 L.Ed.2d 1 (1979)).

■ **A. The Federal Law Question.** Bankruptcy attempts to provide the debtor a "fresh start" in life, an opportunity to begin anew "unhampered by the pressure and discouragement of preexisting debt." *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971). Property settlements in marriage dissolution cases are generally considered dischargeable debts. *See In re Morel,* 983 F.2d 104, 104–05 (8th Cir.1992). Such discharged settlements are generally not recoverable by the spouse to whom the payments were originally due. *See* 11 U.S.C. § 524 (1998); *Siragusa v. Siragusa,* 27 F.3d 406, 408 (9th Cir. 1994) (attempts to collect a discharged property settlement violate the section 524 standing injunction against collection of a discharged debt). However, the bankruptcy code also contains public policy exceptions which are given priority over the debtor's interest in a fresh start. For example, payments for alimony, maintenance, or support are not dischargeable in bankruptcy. *See* 11 U.S.C. § 523(a)(5) (1998).

■ Thus, in determining whether to permit a modification of alimony following the discharge of a property settlement in bankruptcy we must first ascertain the purpose of the modification. If the modification is essentially a reinstatement of the property settlement under the guise of alimony, the modification violates section 524 and is not permitted. *See Siragusa v. Siragusa,* 27 F.3d at 408. Mere attempts to "end run" around a bankruptcy discharge are not allowed. *See Brabham v. Brabham,* 184 B.R. 476, 487 (Bankr.D.S.C.1995). However, if the alimony modification merely takes into account the fact that one spouse would no longer receive the property settlement payments upon which the original support award was premised and the discharge results in changed financial circumstances, then modification will not violate federal bankruptcy law. *Id.; see also In re Danley,* 14 B.R. 493, 495 (Bankr.D.N.M.1981).

■ **B. The State Law Question.** Determining modification would not violate federal law, however, does not resolve the propriety of modification with respect to our state law. Modification of a dissolution decree is governed by Iowa Code section 598.21(8). In applying this provision, our courts are guided by the following principles:

(1) there must be a substantial and material change in the circumstances occurring after the entry of the decree; (2) not every change in circumstances is sufficient; (3) it must appear that continued enforcement of the original decree would, as a result of the changed conditions, result in positive wrong or injustice; (4) the change in circumstances must be permanent or continuous rather than temporary; (5) the change in financial conditions must be substantial; and (6) the change in circumstances must not have been within the contemplation of the trial court when the original decree was entered.

*In re Marriage of Cooper,* 524 N.W.2d 204, 206 (Iowa App.1994) (citing *In re Marriage of Vetternack,* 334 N.W.2d 761, 762 (Iowa 1983) (citations omitted)).

No Iowa case has expressly stated alimony may be adjusted to compensate for a discharged property settlement. However, in *In re Marriage of Geil,* the Iowa Supreme Court removed from a dissolution decree a provision that increased spousal support to a wife in the event the husband discharged his property settlement obligations through bankruptcy. *In re Marriage of Geil,* 509 N.W.2d 738, 742 (Iowa 1993). The court's rationale was that such a provision inappropriately prejudged the wife's right to a modification. *Id.* "[E]ntitlement to a modification turns on proof of a substantial change in circumstances. Future events will determine the parties' relative rights in this regard." *Id.* (citations omitted).

■ In so ruling, the Iowa Supreme Court left open the possibility that where property settlement obligations are eliminated through bankruptcy, modification may be warranted. We therefore hold a modification may be appropriate if the bankruptcy and the consequences thereof are shown to satisfy the principles enumerated in *Vetternack*

and the modification does not violate the policies underlying section 524 of the federal bankruptcy code.[3]

### III. Modifying Terry's Alimony in Light of B.J.'s Bankruptcy.

When interpreting dissolution decrees, we look to the intent of the trial court as gathered from the decree and other proper evidence. *See In re Marriage of Ruter*, 564 N.W.2d at 851. Extrinsic evidence may be considered "not to show the language means something different than what is said in the instrument [decree] involved, but to show what is meant by what is said." *Id.* (quoting *Peters v. Peters*, 214 N.W.2d 151, 157 (Iowa 1974)).

Terry testified during the modification hearing the anticipated lump sum payments were to derive from tournament revenues and the consequent increased economic value of the bowling business that would follow. Terry now argues that if the parties had understood future property divisions were contingent upon the success of the bowling business, then this expectancy would have been written into their stipulation. She implies that in its absence, the lump sum payments were unrelated to the success of the bowling business and the tournament in 1991.

We disagree that what was contemplated would necessarily have been reduced to writing. We are concerned with the apparently inconsistent positions argued by Terry and are inclined to give greater weight to her hearing testimony. This testimony offers a more credible reading of the dissolution decree.

Moreover, because of the timing of the payments, we find it was within the reason-able contemplation of the trial court that the payments were contingent on the success of the tournament and the consequent improved financial status of the business. Financial success of a business is often speculative, especially when looking three to eight years into the future of an already struggling business. It is only reasonable to conclude the court was aware of this fact when it entered the dissolution decree.

Therefore, the discharge of the property settlement obligations through bankruptcy provides no basis to modify the original alimony award in this case. There has not been a substantial change in circumstances outside of what was reasonably contemplated by the trial court at the time the original decree was entered. The effects of the bankruptcy should not have been considered by the trial court. Because we determine the modification on bankruptcy grounds is not appropriate under state law in this case, we need not consider whether the modification violates federal bankruptcy law.

### IV. Prolonged Unemployment as Basis for Modification of Alimony.

B.J. next contends Terry's inability to find full time teaching employment is not a substantial change in circumstances warranting alimony modification. Terry has diligently sought employment as a school teacher. She is respected by her peers. She has sufficient training to get a job as a teacher, but because of factors beyond her control has been unable to do so. Her inability to find more than short term and substitute teacher work appears to be no fault of her own. This is not a situation where self-inflicted problems would prevent modification of a dissolu-

---

**3.** Other states have also found bankruptcy discharge of a property settlement may be grounds for modification of an alimony award. *See Siragusa v. Siragusa*, 108 Nev. 987, 843 P.2d 807, 813 (1992) (ruling trial court did not err in modifying husband's alimony obligation where court properly considered discharged obligation as a "changed circumstance" justifying modification in that the discharge changed both husband's and wife's financial circumstances, and where the modification of alimony did not merely re-create debt discharged under federal bankruptcy laws); *Coakley v. Coakley*, 400 N.W.2d 436, 440 (Minn.Ct.App.1987) (court has authority to modify alimony where a property award to the dependent spouse is discharged in a bankruptcy proceeding of the payor spouse and where it is shown a substantial change of circumstances has occurred that makes the original order unreasonable and unfair and the trial court's determination is supported by findings consistent with the state's alimony modification statute); *see also Richardson v. Richardson*, 868 P.2d 259 (Wyo. 1994); *Eckert v. Eckert*, 144 Wis.2d 770, 424 N.W.2d 759 (Ct.App.1988).

tion decree. *See, e.g., In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987).

The dissolution court's original award of $800 per month for three years was apparently intended to be rehabilitative. Because of the short duration of the original award, it is highly unlikely the court envisioned Terry would have such great difficulty in securing a teaching job. At age forty-six she still has not been able to secure a full time teaching position, and we are not persuaded she will be able to gainfully re-enter the job market without additional rehabilitation. These facts demonstrate a change in employment status commensurate with that envisioned in Iowa Code section 598.21(8).

We determine the purpose of the initial alimony award has not been served: Terry "has not yet attained a position of self-support due to no fault of her own." *In re Marriage of Marshall,* 394 N.W.2d 392, 396 (Iowa 1986). We determine there have been substantial changes in circumstances warranting a modification of alimony.[4]

## V. *Equitable Nature of Awarded Alimony.*

B.J. contends the amount of alimony awarded is inequitable. The modification order cited both Terry's inability to find work and the discharged property settlement as grounds for imposing the $1800 per month award.[5] As we have already explained, the trial court should not have considered the bankruptcy in modifying the decree. However, in light of Terry's employment status, some additional alimony is warranted. We therefore reduce the trial court's award of $1800 per month for five years to $800 per month for five years. We decline to award

attorney fees on appeal. Costs on appeal are assessed one half to each party.

## AFFIRMED AS MODIFIED.

---

4. Despite B.J.'s request, we refrain from discussing the court's power to reinstate a dormant alimony award. The record reveals that despite the significant reduction of alimony after three years from $800 to $1 and despite Terry's failure to make the annual payment of one dollar, there nevertheless exists an ongoing obligation to pay support of one dollar. Thus, despite appellee's arguments to the contrary, this case is properly viewed as an action to modify current obligations rather than an action to reinstate terminated

obligations. We refuse to find $1 to be a *de minimis* obligation equivalent for all practical purposes to a terminated obligation.

5. In fact, it appears bankruptcy was the court's primary basis for modifying the alimony. The court found B.J.'s bankruptcy had discharged $109,000 of the $150,000 lump sum property settlement. The court ultimately granted Terry $108,000 ($1800 per month for sixty months).