**IN THE COURT OF APPEALS OF IOWA**
No. 14-0131
Filed December 10, 2014

**IN RE THE MARRIAGE OF KYLE FRANK SMITH
AND LACY KAY SMITH**

**Upon the Petition of
KYLE FRANK SMITH,**
      Petitioner-Appellant,

**And Concerning
LACY KAY SMITH,**
      Respondent-Appellee.

_____

Appeal from the Iowa District Court for Marion County, Gregory A. Hulse, Judge.

A father appeals the provisions of the parties' dissolution decree granting the mother physical care of the parties' child and ordering him to pay spousal support. **AFFIRMED.**

Pamela A. Vandel, Des Moines, for appellant.

James R. Cook, West Des Moines, for appellee.

Considered by Mullins, P.J., Bower, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**MAHAN, S.J.**

A father appeals the provisions of the parties' dissolution decree granting the mother physical care of the parties' child and ordering him to pay spousal support. We decline to modify the court's determination that it was in the child's best interests to be placed in the mother's physical care. We affirm the court's conclusion the mother was entitled to spousal support of $500 per month for twenty-four months while she returned to school. We determine the father should be responsible to pay $1000 towards the mother's appellate attorney fees.

**I. Background Facts & Proceedings.**

Kyle and Lacy Smith were married in 2011. They have one child, who was born in February 2012. After about fifteen months of marriage, the parties separated in November 2012. Lacy moved out of the marital home, taking the child with her. Kyle filed a petition for dissolution of marriage on December 20, 2012.

After the parties separated, Lacy permitted Kyle only minimal access to the child until an order on temporary matters was entered on January 25, 2013. Pursuant to this temporary order, the court granted the parties joint legal custody and placed the child in their joint physical care. Kyle was ordered to pay child support of $413 per month. Kyle was awarded the marital home, his vehicle, personal property, and certain debts. Lacy was awarded her vehicle and personal property. Kyle was ordered to pay Lacy a cash property settlement of $3000. This order was approved as to form and content by the parties.

Although Kyle had agreed to joint physical care at the time of the order on temporary matters, he later requested physical care of the child, stating he was concerned about Lacy's stability. He filed an application for the appointment of a custody evaluator. The court entered an order on April 4, 2013, appointing Dr. Jerome Fialkov, a psychiatrist, to complete a custody evaluation. Dr. Fialkov experienced unexpected complications from cataract surgery, which delayed his report. He sent a letter to the court on July 25, 2013, stating he was going to recommend Kyle have physical care of the child because he was the more stable parent. A full report supporting his recommendation was filed later.

The dissolution hearing commenced on October 24, 2013. Kyle was then twenty-six years old. He has an associate's degree in computer technology. Kyle was employed as the manager of the Albia location of Smith Fertilizer & Grain, a company owned by other members of his family. He has annual income of $61,641. Kyle purchased a house in Knoxville prior to the parties' marriage and continued to reside in the same home, where he lived with Kristin Spaulding. Kristin has two children, one of whom is in her physical care.[1] Kyle did not have any health concerns.

Lacy was twenty-two years old at the time of the dissolution hearing. She had a high school degree and was studying cosmetology at the Iowa School of Beauty. Lacy did not work outside the home during the marriage. At the time of the trial she was working about ten hours per week as a waitress. She earned

---

[1] Kristin's other child is in the care of the child's father, Kurtis Glenn. The relationship between Kyle and Lacy was complicated by the fact Kurtis was in a relationship with Lacy for a period of time. Kurtis and Kristin had problems in their own child custody arrangements.

about $4862 per year. After the parties separated, Lacy and the child lived with her parents, then with Lee Sandmeier (a paramour) for a month or two, then back with her parents, and then in her own residence in Knoxville. Lacy experienced some depression after the birth of the child.

The district court issued a dissolution decree for the parties on December 30, 2013. The court placed the child in the parties' joint legal custody, with Lacy having physical care. The court did not follow the recommendation of Dr. Fialkov, finding he was biased in favor of Kyle, who had paid for the evaluation. The court found Lacy had been the primary caretaker prior to the order on temporary matters. Kyle was granted visitation one evening each week, alternating weekends, alternating holidays, and three weeks in the summer.[2] Kyle was ordered to pay child support of $829 per month. He was also ordered to pay rehabilitative alimony of $500 per month for twenty-four months. Kyle was ordered to pay $8500 for Lacy's trial attorney fees. Kyle now appeals the physical care and spousal support provisions of the dissolution decree.

## II. Standard of Review.

Our review in dissolution cases is de novo. Iowa R. App. P. 6.907; *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). We examine the entire record and determine anew the issues properly presented. *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). We give weight to the factual findings of the district court, but are not bound by them. *In re Marriage of Geil*, 509 N.W.2d 738, 741 (Iowa 1993).

---

[2] The summer vacation increases to four weeks when the child is old enough to attend kindergarten.

### III. Physical Care.

**A.** Kyle first claims the district court improperly disregarded the recommendation of Dr. Fialkov. He states Dr. Fialkov's recommendation was based on the results of tests and the scores on those tests speak for themselves. He also states it is not evidence of bias that Dr. Fialkov knew the result of his evaluation prior to filing his report because all of the tests had been completed by the time he made his preliminary recommendation.

The court determines the weight to be given to the recommendation in a child custody evaluation. *In re Marriage of Crotty*, 584 N.W.2d 714, 717 (Iowa Ct. App. 1998). A lack of neutrality by the evaluator is a factor the court takes into consideration in assigning weight to the recommendation. *In re Marriage of Rebouche*, 587 N.W.2d 795, 799 (Iowa Ct. App. 1998). We note the recommendation in a child custody evaluation is simply that, a recommendation. *See id.* (noting an expert's recommendation is not binding on the court). Dr. Fialkov's recommendation is but one factor in our overall consideration of the evidence.

**B.** Kyle contends the district court should have granted him physical care of the parties' child. He states he is the more stable parent. He points out he is living in the same home and has the same employer as at the time the parties married. He states Lacy has moved more often, lacked commitment to completing her education, and has an unstable work history. He also states he is willing to support Lacy's relationship with the child, while Lacy permitted him to have only minimal contact with the child between the time she moved out of the home until the temporary order was entered.

The critical issue before us is the best interests of the child. Iowa R. App. P. 6.904(3)(o). This must, of necessity, be the first and governing consideration in our discussion. *Rebouche*, 587 N.W.2d at 797. The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41 (2011) and *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974). The court should select a custodial parent who can minister more effectively to the long-range best interests of the child. *In re Marriage of Kramer*, 297 N.W.2d 359, 363 (Iowa 1980). The objective should always be to place the child in the environment most likely to bring him to a healthy physical, mental, and social maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Each custody decision is based on its own particular facts. *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992).

Much time and energy in the dissolution trial was spent in presenting evidence concerning allegations of infidelity by both of the parties. "[W]hile a parent's moral misconduct is a serious consideration, it is only one of several factors to be considered." *In re Marriage of Hart*, 547 N.W.2d 612, 614 (Iowa Ct. App. 1996). It is a factor to be "weighed most heavily only in those cases where the misconduct occurred in the presence of the children." *In re Marriage of Roberts*, 545 N.W.2d 340, 343 n.1 (Iowa Ct. App. 1996). Thus, there are only two instances that are of interest to this court—Lacy's decision to move with the minor child into Lee's home and Kyle's decision to live with Kristin while he was exercising joint physical care. To the extent we consider moral misconduct in this case at all, it does not weigh more heavily against one party or the other.

An important factor in determining the appropriate parent to provide physical care for a child is to look at which parent was the primary caretaker during the marriage. *Hansen*, 733 N.W.2d at 696 ("[S]tability and continuity of caregiving have traditionally been primary factors."). "[T]he successful caregiving by one spouse in the past is a strong predictor that future care of the child[] will be of the same quality." *Id.* at 697. Lacy was the primary caregiver from the time the child was born until joint physical care was established in the temporary order.

Lacy's testimony detailed activities she engaged in with the child. She showed that she involved him in play activities with other children and in activities with other family members. Lacy was the parent who took the child to medical appointments. We also note, as did the district court, that there were no problems with Kyle having access to the child after the temporary order was entered.

The record shows both Kyle and Lacy would be suitable caretakers for the child. We find the following statement by the Iowa Supreme Court to be very helpful in this circumstance:

> There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases "is greatly helped in making a wise decision about the parties by listening to them and watching them in person." In contrast, appellate courts must rely on the printed record in evaluating the evidence. We are denied the impression created by the demeanor of each and every witness as the testimony is presented.

*In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (citations omitted). The district court had the opportunity to observe the parties and the witnesses,

and came to the conclusion it was in the child's best interests to be placed in the physical care of Lacy. We decline to modify the court's determination.

## IV. Spousal Support.

**A.** Kyle claims the district court improperly awarded Lacy spousal support of $500 per month for twenty-four months. He asserts that at the time the temporary order was entered the parties had entered into a stipulation on all issues, including an agreement there would be no award of spousal support. A stipulated dissolution decree was drawn up at that time, but was not submitted to the court because the ninety-day waiting period found in section 598.19 had not elapsed. Kyle later changed his mind about the issue of physical care. The proposed stipulated decree was never submitted to the court.

Prior to the trial, Kyle asked the court to enforce the property distribution in the proposed stipulated decree. Lacy asked the court to address the issues of property division and alimony. At that time Kyle did not argue that the issue of alimony had already been encompassed in the proposed stipulated decree. Furthermore, the court did not address the issue of whether Lacy was precluded from receiving alimony due to the proposed stipulated decree. Kyle did not file a post-trial motion. *See In re Marriage of Maher*, 596 N.W.2d 561, 567 (Iowa 1999) (finding error had not been preserved when an issue had not been raised at trial or in a post-trial motion). We conclude Kyle did not preserve error on his claims regarding the stipulation.

**B.** Kyle also claims Lacy is not entitled to spousal support because he has already assisted her in reestablishing her life through the distribution of property. In the temporary order Kyle paid Lacy $3000, which he testified was to

help her go back to school. He also agreed to pay off the debts on her vehicle and wedding rings so that she left the marriage with very little debt.

"Property division and alimony should be considered together in evaluating their individual sufficiency." *In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998). Spousal support is not an absolute right. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Whether spousal support is proper depends on the facts and circumstances of each case. *In re Marriage of Brown*, 487 N.W.2d 331, 334 (Iowa 1992). When determining whether spousal support is appropriate, we considered the relevant factors found in section 598.21A. *Hansen*, 733 N.W.2d at 704.

In awarding Lacy spousal support, the district court noted the substantial difference in the parties' earning capacities, Lacy's absence from the job market during the marriage, her responsibility to care for the child, the time and expense necessary to acquire training necessary to find appropriate employment, and the fact there was no division of Kyle's 401(k) account. We agree with the district court's determination Lacy will need a period of readjustment so that she can complete her education and acquire the skills to be able to support herself in the future. We conclude the court properly ordered Kyle to pay spousal support of $500 per month for twenty-four months. A district court has considerable latitude in making an award of spousal support, and we will disturb the court's award only if it is inequitable. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012).

**V. Appellate Attorney Fees.**

Lacy asked for attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider the needs of the party seeking attorney fees, the ability of the other party to pay, and the relative merits of the appeal. *Id.* We determine Kyle should be responsible for paying $1000 towards Lacy's appellate attorney fees.

We affirm the decision of the district court. Costs of this appeal are assessed to Kyle.

**AFFIRMED.**