# IN THE COURT OF APPEALS OF IOWA

No. 16-0401
Filed January 25, 2017

IN RE THE MARRIAGE OF CARA LYNN MATTESON
AND TAYLOR BRYCE MATTESON

Upon the Petition of
CARA LYNN MATTESON,
        Petitioner-Appellee,

And Concerning
TAYLOR BRYCE MATTESON,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Ian K. Thornhill,

Judge.


        Taylor Matteson appeals the child custody, visitation, child support,

spousal support, property division, and attorney fee provisions of the decree

dissolving his marriage to Cara Matteson. **AFFIRMED AS MODIFIED.**


        Christine L. Crilley of Crilley Law Offices, P.L.L.C., Hiawatha, for

appellant.

        Constance Peschang Stannard of Johnston, Stannard, Klesner, Burbidge

& Fitzgerald, P.L.C., Iowa City, and Frank J. Nidey of Nidey Erdahl Tindal &

Fisher, P.L.C., Cedar Rapids, for appellee.


        Considered by Danilson, C.J., and Mullins and Bower, JJ.

**MULLINS, Judge**

Taylor Matteson appeals the child custody, visitation, child support, spousal support, property division, and attorney fee provisions of the parties' dissolution decree. We affirm the district court's decision placing the parties' children in the physical care of Cara Matteson, the division of the dependency exemptions, the awards of child support and spousal support, and the award of trial attorney fees. We modify on the issues of visitation and the division of property. We do not award any appellate attorney fees.

## I.  Background Facts and Proceedings

Taylor and Cara were married in 2006. They have two children, born in 2010 and 2012. The parties separated in February 2014. Taylor remains in the marital residence in Manchester, Iowa, while Cara has moved to Marion, near her parents.

Cara filed a petition for dissolution of marriage on February 28, 2014. An order on temporary matters, filed on June 10, 2014, placed the children in the parties' joint physical care. Cara had the children four days each week and Taylor had them three days. Taylor was ordered to pay temporary child support of $433 per month and temporary spousal support of $500 per month.

Taylor was thirty-nine years old at the time of the dissolution hearing, held in October 2015. He has a degree in construction management. Taylor was employed by the City of Manchester as a Planning and Project Coordinator, and earned $63,174 annually. Cara was thirty-six years old at the time of the dissolution hearing. She has a degree in environmental science and geology. Cara worked part time at Delaware County Soil and Water Conservation, where

she earned $1258 per month, or $15,096 annually. Additionally, she had returned to college to obtain her credentials to become a high school teacher.

The district court issued a dissolution decree for the parties on January 11, 2016. The court granted the parties joint legal custody of the children and placed them in the physical care of Cara. The court ruled Cara would determine where the children would attend school. Taylor was granted visitation with the children. Taylor was ordered to pay child support of $1104.27 per month for the two children and to provide health insurance for them. The court determined each party could claim one tax dependency exemption.

The court set off accounts valued at $76,779.20 to Cara as premarital assets. The court found the parties' retirement accounts, having a total value of $115,267.89, should be equally divided, giving them each $57,633.95 in retirement assets. Taylor was awarded a vehicle valued at $2000, while Cara was awarded a vehicle valued at $14,000. Thus, in total, Taylor was awarded assets valued at $59,633.95 and Cara was awarded assets valued at $148,413.15.[1] Taylor was ordered to pay Cara spousal support of $1000 per month for a period of thirty months. He was also ordered to pay $6000 toward her trial attorney fees.

Taylor filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2). The court determined Taylor could pay his obligation for Cara's trial attorney fees in installments, but otherwise denied the motion. Taylor now appeals.

---

[1] The marital residence was owned by Taylor's parents. Taylor presented evidence he had signed a promissory note and was expected to pay his parents back for the home. At the time of the dissolution hearing, Cara was also living in a home owned by her parents and stated she was paying them back.

## II.    Standard of Review

Our review in dissolution cases is de novo.  Iowa R. App. P. 6.907; *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007).  We examine the entire record and determine anew the issues properly presented.  *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005).  We give weight to the factual findings of the district court but are not bound by them.  *In re Marriage of Geil*, 509 N.W.2d 738, 741 (Iowa 1993).

## III.    Analysis

### A.    Physical Care

Taylor claims the district court should have placed the children in the parties' joint physical care.  He points out the parties had joint physical care under the order on temporary matters, and he believes they should have continued in a joint-physical-care arrangement.

There are four factors to be considered in determining whether joint physical care is appropriate: (1) approximation, which looks at the parents' caregiving patterns in the past; (2) the ability of the parents to communicate and show respect to each other; (3) the degree of conflict between the parents; and (4) the degree to which the parents are in general agreement about parenting.  *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (citing *In re Marriage of Hansen*, 733 N.W.2d 683, 697-99 (Iowa 2007)).

The district court considered these factors and found:

> The Court finds that joint physical care is not in the best interest of the parties' children.  The relationship between the parties is strained and contentious.  Furthermore, the Court finds credible the testimony of Cara, as corroborated by other credible testimony, that Taylor has attempted to undermine her relationship

with the children and has been manipulative with the children under the temporary custody order in place in this case.  The Court does not doubt that Taylor loves his children and wants what is best for them; however, the Court is convinced that under the circumstances Cara is better suited to be the primary physical care provider.  Although the geographical distance between the parties' current residences would also make joint physical care difficult, the Court's decision regarding the appropriateness of joint physical care is independent of these additional obstacles.

Although both parties were active in caring for the children, Cara provided a majority of their care in the past.  Prior to the dissolution proceedings, the parties had been involved in marital counseling for a number of years due to disagreements and problems with communication.  The evidence supported the court's finding the relationship between the parties was strained and contentious.  Based on the parties' communication problems, discord, and differences in parenting styles, we agree with the district court's conclusion and determine joint physical care is not appropriate under the facts of this case.

Taylor raises an alternative argument, stating if we find joint physical care is not appropriate, the children should be placed in his physical care.  In considering physical care, we look at the factors found in Iowa Code section 598.41(3) (2013), and those listed in *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974).  Our controlling consideration is the best interests of the children.  *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

As noted above, Cara had provided a majority of the children's care in the past.  Also, the district court found, "Taylor has attempted to undermine [Cara's] relationship with the children and has been manipulative with the children under the temporary custody order in place in this case."  "The parent awarded physical care is required to support the other parent's relationship with the child."

*Hansen*, 733 N.W.2d at 700. Because Cara has shown a greater willingness to support Taylor's relationship with the children than Taylor has shown to support Cara's relationship with them, we affirm the district court's decision placing the children in Cara's physical care.

### B. Children's School

In the custody provision, the district court ruled, "As the primary care parent, Cara will have the final say as to where the children attend school." Taylor states that as a joint legal custodian of the children, he is entitled to "equal participation in decisions affecting the child[ren]'s legal status, medical care, education, extracurricular activities, and religious instruction." *See* Iowa Code § 598.41(5)(b).

One of the areas of contention between the parties was where the children would attend school. Taylor wanted the children to go to school in the Manchester school district, where the oldest child had been attending preschool; Cara wanted the children to attend school in Marion, where she was living. Iowa Code section 598.41(5)(b) grants both joint legal custodians with rights and responsibilities to equal participation in decisions affecting children's education. Thus, Taylor was entitled to be consulted about where the children attend school; but when the parties were unable to agree on which school, the final say on the subject should be with the parent having physical care of the children—Cara. *See Hoffman*, 867 N.W.2d at 33, 35-36 (finding the physical-care parent should have the final say concerning where the children's home should be, including which school the children should attend). We affirm the court's ruling Cara should have the final decision as to where the children attend school.

## C.    Visitation

Taylor contends the district court should have granted him more visitation time with the children.  The court determined Taylor should have visitation on alternating weekends, a midweek evening visitation on weeks when he does not have the children on the weekend, alternating holidays, and two weeks in the summer.  Taylor asks for overnight midweek visitation every week and more visitation in the summer.

"In determining the appropriate amount of visitation, we are guided by the principle a court should order such visitation as will ensure a child the opportunity for maximum continuing physical and emotional contact with the noncustodial parent." *In re Marriage of Krone*, 530 N.W.2d 468, 471-72 (Iowa Ct. App. 1995) (citing Iowa Code § 598.41(1)).  Generally, liberal visitation rights are considered to be in children's best interests.  *In re Marriage of Rykhoek*, 525 N.W.2d 1, 4 (Iowa Ct. App. 1994).

We determine the present visitation schedule, affording Taylor visitation on alternating weekends, with a midweek evening visitation on the week when he is not having weekend visitation, is in the children's best interests.  The children have the opportunity to spend time with Taylor every week.  We determine, however, Taylor should have four weeks of visitation with the children over the summer, and modify the decree accordingly.  Taylor's four weeks of summer visitation should be taken in two two-week periods.  In all other respects, we affirm the visitation schedule as set forth by the district court.

### D. Child Support

Taylor claims the district court improperly calculated his child-support obligation. He states the court should have imputed a greater amount of income to Cara. At the dissolution hearing, Cara was working part time and going to school. She testified her projected income was about $15,000 per year, from working part time and substitute teaching. He states with her credentials she should be able to earn about $80,000 to $90,000 per year.

A parent's current monthly income must be determined from the most reliable evidence presented. *In re Marriage of Powell*, 747 N.W.2d 531, 534 (Iowa 1991). "This often requires the court to carefully consider all of the circumstances relating to the parent's income." *Id.*

When the parties were first married they lived in California because Cara could not find employment as a geologist in Iowa. She worked full time in California and earned about $76,000 per year. The parties moved back to Iowa in 2009. Cara has not had a full-time job in Iowa and has spent the majority of her time caring for the parties' children. We determine the district court properly considered her imputed income in Iowa, about $15,000 per year, in determining Taylor's child-support obligation.

Taylor also claims the district court should have found his income was $58,314 per year, rather than $63,174. A paystub from Taylor's employer showed he earned $2429.77 on a pay date of August 28, 2015 (a Friday), for a pay period ending August 22 (a Saturday). Taylor states he was paid two times a month, giving him income of $58,314.48 ($2429.77 x 24 pay periods), yet neither the pay period or pay date correspond with customary twice-monthly pay

periods or dates. Cara claimed Taylor was paid every two weeks, which would make his income $63,174.02 ($2429.77 x 26 pay periods). That same paystub showed his earnings year to date of $43,423.06.[2] The district court found his annual income was $63,174. Taylor's W-2 from 2014 showed he had wages of $53,180 that year. Based on our review of the record, we find evidence to support the district court's conclusion, and we are not convinced Taylor's claims are correct. We affirm the district court's child-support calculation.

### E. Dependency Exemptions

Taylor asserts the district court should have awarded the tax dependency exemptions for both children to him. In general, the parent having physical care of a child is entitled to claim the child as a tax exemption. *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005). "However, courts have authority to award tax exemptions to the noncustodial parent 'to achieve an equitable resolution of the economic issues presented.'" *Id.* (citation omitted).

We conclude the district court achieved an equitable resolution by determining each party should claim one child as a tax dependency exemption, then when only one child is eligible to be claimed, the parties would alternate the exemption.

### F. Spousal Support

Taylor claims he should not be required to pay spousal support because Cara was capable of supporting herself. He again claims Cara is capable of

---

[2] If he is paid every two weeks, the $43,423.06 approximates to $2429.77 times the number of two-week pay periods from the first of the year through the August 28 pay date, and would annualize to a salary of $62,722. If he is paid twice a month, the $43,423.06 approximates to $2713.94 twice each month, which would annualize to approximately $65,134.

earning about $80,000 per year and states the district court improperly imputed income to her of $15,000 per year. The district court ordered Taylor to pay spousal support of $1000 per month for thirty months.

"Property division and alimony should be considered together in evaluating their individual sufficiency." *In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998). Spousal support is not an absolute right. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Whether spousal support is proper depends on the facts and circumstances of each case. *In re Marriage of Brown*, 487 N.W.2d 331, 334 (Iowa 1992). When determining whether spousal support is appropriate we consider the relevant factors found in section 598.21A. *Hansen*, 733 N.W.2d at 704.

We find the award of spousal support in this case is equitable. At the time of the dissolution hearing, Cara had gone back to school in order to obtain the certification necessary to become a high school science teacher. While Cara was not self-supporting at the time of the dissolution hearing, she was engaged in a plan that would permit her to support herself in the future. The award of spousal support will permit her to finish her education and give her time to obtain full-time employment.

### G. Property Division

Taylor claims the district court did not equitably divide the parties' assets. He contends the court should not have set aside to Cara premarital assets valued at $76,779.20. Taylor points out that in total, he was awarded assets valued at $59,633.95 and Cara was awarded assets valued at $148,413.15.

Taylor asks to be awarded an Edward Jones IRA, valued at $67,435.89, which he claims is his premarital property.

Under section 598.21, all of the parties' property, except inherited property or gifts, should be equitably divided between the parties. The marital estate includes not only property acquired during the marriage, "but property owned prior to the marriage by a party." *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). "The trial court may place different degrees of weight on the premarital status of property, but it may not separate the asset from the divisible estate and automatically award it to the spouse that owned the property prior to the marriage." *Id.* "'[P]roperty brought to the marriage by each party' is merely one factor among many to be considered under section 598.21." *Fennelly*, 737 N.W.2d at 102 (citation omitted). Property received by a party through inheritance or gift is the property of that party and such property is not subject to property division "except upon a finding that refusal to divide the property is inequitable to the other party or the children of the marriage." Iowa Code § 598.21(6). In dividing marital property, we consider the factors in section 598.21. *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013)

In the present case, the district court granted Cara a greater portion of the marital assets, briefly stating accounts valued at $76,779.20 would "be offset to Cara as premarital assets." On appeal, Cara claims her premarital assets were actually gifts from her family and so were properly omitted from the marital estate. She does not cite any evidence in the record to support her claim and, after reviewing the transcript, we have not found any evidence on this subject but

note Taylor's objection to that allocation focuses on the court's failure to allocate premarital assets to him.

The district court equally divided Taylor's Edward Jones IRA, valued at $67,435.89. Taylor claims this asset was accumulated by him premarriage. Cara admitted during trial that if she were awarded premarital assets, he should be awarded his premarital assets as well. We modify the property division to award this asset to Taylor. After this modification, Taylor is awarded assets worth $95,351.90 and Cara is awarded assets worth $114,695.20. We conclude this is a more equitable result.[3] *See id.* ("Iowa is an equitable distribution state.").

### H.  Trial Attorney Fees

Taylor asserts the district court abused its discretion by ordering him to pay $6000 toward Cara's trial attorney fees. "We review a district court's decision on attorney fees for abuse of discretion." *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Sullins*, 715 N.W.2d at 255. We conclude the district court did not abuse its discretion in ordering Taylor to pay $6000 toward Cara's trial attorney fees. Taylor had a greater earning capacity than Cara and currently has a greater ability to pay attorney fees.

### I.  Appellate Attorney Fees

Both parties request attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *Id.* (citation omitted). "We consider the needs of the party making the request, the ability of

---

[3] Although we have addressed these assets as the parties argued—as premarital assets—we note the result would be much the same had we divided all the parties assets without regard to premarital status.

the other party to pay, and whether the party was required to defend the district court's decision on appeal." *Berning*, 745 N.W.2d at 94. We conclude each party should pay his or her own appellate attorney fees.

**IV.    Conclusion**

We affirm the district court's decision placing the parties' children in the physical care of Cara, the division of the dependency exemptions, the awards of child support and spousal support, and the award of trial attorney fees. We modify on the issues of visitation and the division of property. We do not award any appellate attorney fees.

**AFFIRMED AS MODIFIED.**

Bower, J., concurs; Danilson, C.J., concurs in part and dissents in part.

**DANILSON, Chief Judge.** (concurring in part, dissenting in part).

I agree with the majority except in respect to the spousal support. The court ordered spousal support of $1000 per month for thirty months. This award is in addition to an equal division of assets in an eight-year marriage. During her testimony, Cara explained she was seeking support because she would have to substitute teach for two to three years before she could get a permanent teaching position. Although her income might not be as predictable while substitute teaching and she would undoubtedly lack employment benefits, she would still have income. I would modify on this issue and set spousal support for two years in the amount of $1000 per month for the first twelve months and $500 per month for the next twelve months.