## IN THE COURT OF APPEALS OF IOWA

No. 17-0805
Filed August 15, 2018

IN RE THE MARRIAGE OF DAVID CHARLES BALIK
AND DEBORAH MARY BALIK

Upon the Petition of
DAVID CHARLES BALIK,
　　　　Petitioner-Appellee,

And Concerning
DEBORAH MARY BALIK,
　　　　Respondent-Appellant.

_____

　　　　Appeal from the Iowa District Court for Linn County, Paul D. Miller, Judge.


　　　　Deborah Balik appeals the economic provisions of the decree dissolving her marriage to David Balik. **AFFIRMED AS MODIFIED.**


　　　　Karen A. Volz of Ackley, Kopecky & Kingery, LLP, Cedar Rapids, for appellant.

　　　　Crystal L. Usher of Nazette, Marner, Nathanson & Shea LLP, Cedar Rapids, for appellee.


　　　　Heard by Vaitheswaran, P.J., and Potterfield and Tabor, JJ.

**VAITHESWARAN, Presiding Judge.**

Deborah and David Balik married in 1987, separated in 2014, and divorced in 2017. On appeal, Deborah contends (1) the district court inequitably divided their property; (2) she should have been awarded spousal support; and (3) David should have been ordered to pay her trial attorney fees. She also seeks an award of appellate attorney fees.

## I. Property Division

The district court valued the assets subject to division at $592,160. The court limited Deborah's award to forty percent of that total, based on a finding she "dissipated or wasted marital assets."

Deborah does not challenge the total valuation figure.[1] Instead, she argues the finding of dissipation was unwarranted and she should have received half "the value [of $592,160] for a total of $296,080.00." She requests an additional $59,216 to equalize the property distribution.

"A court may generally consider a spouse's dissipation or waste of marital assets prior to dissolution when making a property distribution." *In re Marriage of Kimbro*, 826 N.W.2d 696, 700 (Iowa 2013). "The dissipation doctrine applies when a spouse's conduct *during the period of separation* "results in the loss or disposal of property otherwise subject to division at the time of divorce." *Id.* at 700-01 (emphasis added). "[T]he doctrine does not apply if the spending spouse used the monies for "legitimate household and business expenses." *Id.* at 701.

---

[1] She asserts the court acted inequitably in failing to include the equity in the family home among the divisible assets, but her equalization request is based on the district court's valuation figure of $592,160.

The district court made the following pertinent findings on dissipation:

>	It is clear that from approximately 2008 on that Deborah spent more than $200,000 which is largely unaccounted for.  This includes the home equity loan, her inheritance, and 401(k) proceeds.  Her testimony that this large amount of money went for living expenses is simply not credible.  Some of it may have gone for marital expenses, but a substantial amount has more to do with Deborah's lack of money skills and out-of-control spending.  As an example, Deborah acknowledged taking more than $4500 in withdrawals out of the parties' joint checking account (in which account David deposited his paychecks) in a 48 hour period.

On our de novo review, we disagree with these findings.

As noted, *Kimbro* identified the time frame for analysis of dissipation as the period of separation.  *Id.* at 700-01.  The district court based its finding of dissipation on expenditures beginning six years before the separation date.  That fact alone renders the finding of dissipation inequitable.

*Kimbro* also requires the spouse claiming dissipation of assets by the other spouse to "identify the assets allegedly dissipated." *Id.*  Only then does the burden shift to the spending spouse to "show how the funds were spent."  *Id.*  David's summary exhibit underlying the finding of dissipation lists each cash withdrawal made by Deborah in three of the twenty-nine years the couple was married.  The exhibit covers only a fraction of the marriage and, as discussed, covers a period predating the separation.  Beyond those problematic facts, the exhibit does not indicate how Deborah spent the money she withdrew.  In our view, David failed to meet his initial burden of showing the money was used for purposes other than "legitimate household and business expenses."  *See id.* at 701; *see also In re Marriage of Dyvig*, No. 16-1637, 2017 WL 3525173, at *5 (Iowa Ct. App. Aug. 16, 2017) ("[W]hile it is unclear what the spreadsheet is intended to show, it does not

show dissipation."); *In re Marriage of Berger*, No. 12-1389, 2013 WL 1749799, at *6 (Iowa Ct. App. Apr. 24, 2013) ("Because the record does not reveal what any of these expenditures were for, it is impossible to determine whether they benefited the joint marital enterprise.").

The district court's finding of dissipation was the sole basis for the court's refusal to divide the assets equally. *See In re Marriage of Fennelly*, 737 N.W.2d 97, 102 (Iowa 2007) (stating an equal division is not required, but an equal division is often most equitable). Given the length of the marriage, we conclude Deborah was entitled to the additional $59,216 she requested to equalize the property distribution. *See In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1983) (noting we have affirmed awards of substantially equal property distribution in marriages of long duration). We modify the decree to order David to pay Deborah this additional sum within 180 days of procedendo in this appeal.

## II.  *Spousal Support*

The district court declined Deborah's request for spousal support, reasoning as follows:

> Spousal support and property settlement must be looked at together. They are neither made nor evaluated in isolation. In view of Deborah's dissipation of assets and overspending, her decent dollar amount property settlement, David's assumption of the mortgage on the marital residence, previous payment by David of other credit card debt incurred by Deborah and the fact that David is retiring, no spousal support is awarded.

Deborah contends the district court should have awarded her spousal support of "at least $1500 per month" until she qualifies for Medicare, at which point, the amount could be "reduced to $1000 per month." She points to the length of the

marriage, her inability to work, "multiple health issues," and David's ability to work part-time following his retirement.

The district court premised the denial of spousal support on Deborah's dissipation of assets. Having concluded the finding of dissipation was inequitable and unsupported by the record, we evaluate Deborah's request based on relevant statutory factors. *See* Iowa Code § 598.21A(1)(a)-(j) (2014).

Deborah was sixty-one years old at the time of trial and was unemployed. Previously, she worked for her brother's company doing "clerical, insurance related work" and "whatever was needed," but she was let go "for health reasons" two years before the dissolution trial. Her numerous health conditions, including severe chronic obstructive pulmonary disease, prompted her to apply for Social Security disability benefits. Her application was denied. At that point, she opted for $1170 per month in Social Security retirement benefits, to begin at the age of sixty-two. She was ineligible for Medicare benefits until she turned sixty-five, and she anticipated having to pay between $500 and $1000 per month for private health coverage after the dissolution decree was filed.

David was sixty-five years old at the time of trial. He earned $74,000 in 2016. He continued to work to preserve health insurance coverage for Deborah but anticipated retiring in 2017. He had a pension plan through his employment, which was divided with Deborah, and he expected to receive $2158 per month in Social Security retirement benefits. He paid Deborah $1500 per month in temporary spousal support and covered her insurance needs during the proceedings.

Given the length of the marriage, Deborah's limited income, and her health needs, we conclude Deborah is entitled to spousal support of $500 per month until she becomes eligible for Medicare. We modify the decree to reflect this change.

### III. Trial Attorney Fees

Deborah contends she "should have been awarded attorney fees at trial." She asked the court to order David to pay $2000 toward her attorney fees in addition to the $3000 he was ordered to pay in the temporary order.

"[A]n award of attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa 1989). We cannot conclude the district court abused its discretion in declining to award Deborah the additional $2000 she requested.

### IV. Appellate Attorney Fees

Deborah seeks an award of appellate attorney fees. An award rests in our discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). Given the disparity in incomes, we order David to pay Deborah $3500 toward her appellate attorney fee obligation.

### V. Disposition

We affirm the dissolution decree in all respects except we modify the property division portion of the decree to award Deborah an additional $59,216, payable within 180 days after procedendo in this appeal issues. We further modify the spousal support provision to grant Deborah $500 per month in spousal support

until she becomes eligible for Medicare benefits.  We order David to pay $3500 towards Deborah's appellate attorney fee obligation.

**AFFIRMED AS MODIFIED.**