**IN THE COURT OF APPEALS OF IOWA**

No. 21-1131
Filed May 11, 2022

**IN RE THE MARRIAGE OF DAVID SHORTLEY WILLETT
AND JAMI CHRISTINE WILLETT**

**Upon the Petition of
DAVID SHORTLEY WILLETT,**
        Petitioner-Appellant,

**And Concerning
JAMI CHRISTINE WILLETT,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Story County, John R. Flynn, Judge.


        David Willett appeals the spousal support awarded to Jami Willett in the

dissolution decree, as well as the requirement he maintain life insurance to her

benefit. **AFFIRMED.**



        Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellant.

        C. Aron Vaughn and Barry S. Kaplan of Kaplan & Frese, LLP, Marshalltown,

for appellee.



        Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**BOWER, Chief Judge.**

David Willett appeals the amount and duration of spousal support awarded to Jami Willett in the dissolution decree, as well as the requirement he maintain life insurance with Jami as beneficiary.  Finding no failure to do equity, we affirm.

**I. Background Facts.**

David and Jami Willett were married on June 4, 1994.  The couple began living in their Conrad marital residence in approximately November 1997.  They raised their three now-adult children in that residence, and Jami continues to reside in the home.  David moved out of the home on July 1, 2019.  He currently lives in an apartment in Ames, Iowa.

When the parties separated in 2019, they informally discussed David providing financial assistance to Jami.  David testified he originally paid Jami $1400 every two weeks, then $1200 every two weeks when he took over payment of the children's college accounts.  In early 2020, David's payments to Jami dropped to $1000 every two weeks and then $500 every two weeks.  Eventually David stopped making any payments.  Jami testified she received $1400 payments from David every two weeks, which then turned to $1200 when David took over the children's college accounts, and then, in April 2020, David unilaterally stopped sending financial support payments.  Jami filed an application for temporary spousal support.  On July 27, 2020, the court entered a temporary support order requiring David to pay $2500 per month.

At the dissolution trial held May 26, 2021, Jami requested $3000 per month in traditional lifetime spousal support, protected by a life insurance policy.  David testified if spousal support was awarded, it should not be for more than $1800 per

month, reduced every six months by $600, for a total term of eighteen months. He argued against any requirement he maintain life insurance to benefit Jami. David testified the parties contemplated Jami returning to full-time teaching when the children were all in school full-time. He was frustrated Jami had not obtained a full-time teaching job—then or since.

Jami acknowledged David did ask her to seek full-time employment but disputed David's testimony he pushed her to obtain full-time employment after all the children started attending school on a full-time basis. She testified it was a joint decision for her to stay at home and care for the children and David work full time.

David earned a degree in electrical engineering at Iowa State University in December 1992. At the beginning of his career, David worked for Motorola in Chicago, Illinois, for approximately five years. The parties moved to Marshalltown in 1997, and David worked for Emerson Process Management as a senior software engineer. David currently works for Ag Leader Technology in Ames as a software engineer and has been there for approximately seventeen years. David's gross annual income is approximately $153,660. David provides insurance for the entire family through his employer. David testified he provided tutoring service for a brief period of time, but as of May 21, 2021, his salary at Ag Leader represents his sole source of income. He stated further career advancement opportunities at Ag Leader are unlikely and he does not anticipate substantial salary increases.

Jami earned a degree in elementary education at Iowa State University in 1994. When the parties lived in Chicago, she taught full-time in elementary fine arts for approximately three and a half years. She stopped working when their first

child was born. The parties moved to Conrad when their eldest was two years old. Jami was a substitute teacher after the children reached school age. Jami testified she last taught as a substitute teacher in approximately February 2020 before the COVID-19 pandemic. The majority of Jami's teaching career has been as a substitute teacher at the BCLUW Community School District.[1] Jami has not taught on a full-time basis since approximately 1997, though her teacher's license has not expired. In approximately June 2020, Jami applied for a full-time position at BCLUW for an elementary music opening. However, the position was not filled and ultimately eliminated. Jami stated she was offered a one-year job at BCLUW by the principal, but the job required thirty more credits of education. She explained that after being out of the teaching business on a full-time basis for approximately 23.5 years, she decided she no longer wanted to pursue teaching because it "has just changed so much."

Jami testified she enjoys her current full-time employment at Hens & Chicks Studio, a quilting shop and retreat center in Conrad just three blocks from her home. She makes approximately $15 per hour with occasional overtime hours. Her gross annual income is approximately $31,200. Jami's current employer does not offer health insurance. She anticipates her monthly expenses for health, dental, and vision insurance premiums and copays will be approximately $350 per month.

---

[1] The BCLUW district serves the areas of Beaman, Conrad, Liscomb, Union, and Whitten, Iowa.

The district court divided the marital property equally. The court determined the relevant considerations weighed toward a decree of traditional spousal support and fashioned a decreasing alimony schedule:

> Until David reaches the age of sixty-six years and six months or actually fully retires as a software engineer, he shall pay Jami $2500 per month in spousal support. When David reaches sixty-six years and six months or actually retires as a software engineer, he shall pay $1500 per month. If David retires before Jami reaches the age of sixty-six years and six months, his spousal support obligation shall remain at $1500 per month. However, when Jami reaches the age of sixty-six years and six months, David shall pay $1000 per month.

The court also ordered David to "secure his spousal support obligation by maintaining a $500,000 life insurance policy on his life whereby Jami is the designated beneficiary through his [seventieth] birthday."

David appeals, objecting to the court's award of spousal support to Jami, whom he believes can and should be working full-time making more money. He also contends the court should not have ordered he maintain life insurance to benefit Jami.

## II. Scope and Standard of Review.

We review equity cases such as dissolution of marriage de novo. *In re Marriage of Mann*, 943 N.W.2d 15, 18 (Iowa 2020). We give the district court considerable latitude, *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015), and give weight to the court's factual findings, but we are not bound by them. Iowa R. App. P. 6.907; *see also In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) ("There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases 'is greatly helped in making a wise decision about the parties by listening to them and watching them in person.'" (citation omitted)).

### III. Discussion.

"The purpose of a traditional or permanent alimony award is to provide the receiving spouse with support comparable to what he or she would receive if the marriage continued." *In re Marriage of Hettinga*, 574 N.W.2d 920, 922 (Iowa Ct. App. 1997). "Traditional support is ordinarily of unlimited or indefinite duration." *Gust*, 858 N.W.2d at 408. "[W]hether to award spousal support lies in the discretion of the [district] court." *Id.* Each case is unique and is decided based on its own particular circumstances, after considering all the factors in Iowa Code section 598A.21(1). *Id.* We will only disturb a spousal support award "when there has been a failure to do equity." *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016).

The "duration of the marriage is an important factor for an award of traditional spousal support. Traditional spousal support is often used in long-term marriages where life patterns have been largely set and 'the earning potential of both spouses can be predicted with some reliability.'" *Gust*, 858 N.W.2d at 410 (citation omitted). A marriage lasting twenty-seven years is a long-term marriage. *See id.* at 410–11 ("Generally speaking, marriages lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support."). Here, the parties' earning potential appears to be predictable.

David contends the award of spousal support to Jami is "inequitable because it is too much for too long." He complains, "Spousal support was not designed to put the payer into the poor house." No doubt this statement is true.

But neither should divorce force one spouse into a lower standard of living when the other spouse is making substantially more and is able to pay support.

Jami noted a monthly income of $2000 and expenses of $4250. The court, however, determined Jami had the earning capacity of $45,000 to $50,000 annually. Even accepting the high end of the court's determination, Jami's expenses exceed her monthly earning capacity.

David has a monthly gross income of $12,805 and, in July 2020, claimed monthly expenses of about $8900, which included federal taxes of $768, rent in the amount of $920, car insurance (for six cars) in the amount of $471, "Kids' college funds" in the amount of $918, and 401k contributions of $1280.

In May 2021, David revised his monthly expenses, noting federal taxes of $2195,[2] a contemplated mortgage payment of $2514,[3] 401k contribution of $1280, and car insurance (still for 6 cars) for $406.[4] David testified his expenses included clothing and gifts for the adult children, as well as their cell phone service, car insurance, health insurance, car repairs, and car registration fees. Even with these

---

[2] There is little to explain the claimed difference in monthly federal taxes from 2020 ($768) to 2021 ($2195). David testified he had used a W-4 worksheet and was currently having the higher amount withheld.

[3] At the time of trial, David's rent payment remained $920 per month. He testified he came up with the mortgage figure by looking for a house "comparable" to the family home, i.e., the same square footage and number of bedrooms:

> Well, I mean, that's a tough number to figure out because, you know, I would like to purchase a house here in Ames because, you know, I want to keep my commute short. I've been kind of wanting that for a long time. So, you know, you look on Zillow or you look on websites and you see what the prices of houses are here, they are expensive, and so I just picked a value, you know, for something I believe is, you know, more or less what's in Conrad, you know. And then I just got out a mortgage calculator and punched the numbers in, and that's what I came up with.

[4] He did not include the "kids' college funds" as a monthly expense.

expenses, some of which are speculative or voluntary, David's financial affidavit notes a net income of $2087 per month. David's assertion that paying spousal support will put him in the "poor house" rings hollow. We agree with the district court's finding that David has the ability to pay spousal support.

Here, the district court carefully considered the statutory factors, concluding they weighed in favor of traditional spousal support. After concluding the factors supported an award of traditional spousal support, the court noted other considerations weighed toward a decreasing amount of support:

> The decrease in alimony over time is due to the fact that David will be retirement age or retired when the first decrease occurs. It is unreasonable and unrealistic to think that David will be able to pay $2500 per month to Jami in lifetime alimony when he retires. David testified that he plans on purchasing a home at some point in time. Currently, he does not have the cash to purchase a home outright. Thus, he will be required to seek financing and in all likelihood, he will still be paying his mortgage when he reaches sixty-six years and six months or actually fully retires. Moreover, Jami will have social security income, some income but not much from her IPERS and her traditional IRA, and she will also have income from David's Merrill Lynch 401(k). Also, Jami will be able to plan moving forward knowing that the spousal support she receives will be reducing and that she will need to plan accordingly. Finally, Jami currently has no debt. If she keeps it that way, the reduction in alimony will not be detrimental to her. As stated, she should plan accordingly.[5]

---

[5] After this case was decided below, our supreme court revisited the contours and considerations of spousal support in *In re Marriage of Pazhoor*, 971 N.W.2d 530 (Iowa 2022). The court noted Iowa recognizes rehabilitative, reimbursement, and traditional alimony, each with a different goal:

> *Rehabilitative alimony* serves to support an economically dependent spouse through a limited period of education and retraining. Its objective is self-sufficiency. An award of *reimbursement alimony* is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other. *Traditional alimony* is payable for life or for so long as a dependent spouse is incapable of self-support. The amount of alimony awarded and its duration will differ according to the purpose it is designed to serve.

While David complains he cannot afford to pay Jami spousal support, we find nothing in this record would allow us to reach such a conclusion. Moreover, the district court has the authority to require a party to maintain life insurance to secure a support obligation. *See In re Marriage of Debler*, 459 N.W.2d 267, 270 (Iowa 1990). The trial court provided detailed and extensive findings fully supported on our de novo review. We find no failure to do equity and therefore affirm.

Jami seeks an award of appellate attorney fees in the amount of $1600.[6] "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). In determining whether to award appellate attorney fees, we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). In light of the district court's division of assets and the award of spousal support, we decline to award Jami appellate attorney fees in this appeal. Court costs are assessed to David.

**AFFIRMED.**

---

*Pazhoor*, 971 N.W.2d at 539 (citation omitted). The court then officially recognized a fourth category—transitional alimony—noting "[d]ivorcing spouses must adjust to single life." *Id.* at 542

Here, the district court's decree stated "Jami will be able to plan moving forward knowing that the spousal support she receives will be reducing and that she will need to plan accordingly"—i.e., she would need to adjust to single life.

[6] Eight hours at $200 per hour.