**IN THE COURT OF APPEALS OF IOWA**

No. 23-1558
Filed March 5, 2025


**IN RE THE MARRIAGE OF CHRISTOPHER DEAN FOSTER
AND ABIGAIL LYNNE FOSTER**

**Upon the Petition of
CHRISTOPHER DEAN FOSTER,**
        Petitioner-Appellee,

**And Concerning
ABIGAIL LYNNE FOSTER n/k/a ABIGAIL LYNNE FIEDLER,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.


        The respondent appeals from a dissolution decree, challenging the district

court's property division, spousal support award, and assessment of attorney and

expert witness fees.  **AFFIRMED AS MODIFIED.**


        Amanda Green of Takekawa & Green, PLLC, Ankeny, for appellant.

        Ryan J. Baumgartner and Elizabeth S. Longcor of CashattWarren Family

Law, P.C., Des Moines, for appellee.


        Considered by Greer, P.J., and Ahlers and Badding, JJ.

**BADDING, Judge.**

During their nine-year marriage, Christopher and Abigail Foster[1] amassed an extensive collection of cars and other personal property. At their dissolution trial, Abigail placed a much higher value on many of those items than Christopher—although she did not want to be awarded any of them. The district court found Christopher's valuations more credible and awarded him most of the couple's property, along with almost all their debt. The court ordered Abigail to pay Christopher a property settlement of $28,814.99, while Christopher was ordered to pay Abigail $1000 per month in transitional spousal support for one year, plus $2000 towards her trial attorney fees. Abigail's claim for expert witness fees was denied.

Abigail appeals, challenging the court's property division, spousal support award, and assessment of attorney and expert witness fees. Both parties request an award of appellate attorney fees. We affirm as modified upon our de novo review of the record.

## I.    Background Facts and Proceedings

Christopher and Abigail met online through a dating app. Christopher was living in Florida and running a trucking company at the time, while Abigail was finishing her undergraduate degree here in Iowa. Christopher left his company in Florida and moved to Iowa to be with Abigail in 2012. They got married two years later.

---

[1] Abigail is now known by her maiden name of Fiedler.

After working for another trucking company for a few years, Christopher started his own company with Abigail. They formed Foster Trucking LLC in 2018. Christopher drove the semitrucks, at times employing other drivers to help him, while Abigail did the bookkeeping. They also operated Foster Limo, which Christopher described as a "limo rental company" for weddings, Christmas light tours, and similar events. Christopher estimated that he earned between $100,000 to $120,000 annually from these businesses. Along with her bookkeeping work for Christopher, Abigail was employed as a senior driver recruiter for a different trucking company. Her gross annual income from that job was $57,134. For additional income, the couple regularly bought and sold vehicles they flipped.

Christopher petitioned to dissolve the marriage in June 2022. He stayed in the marital home, while Abigail moved into an apartment. In August, the parties attended mediation and reached a stipulation on temporary matters, which the court approved a few days later. The stipulated order included the following provision: "Christopher shall make a lump sum payment of $17,500 to Abigail by August 15, 2022. This payment shall be taken into consideration in determining the settlement of the final decree." Abigail used the money "for basic living, to make bills, to help stay on top of attorney fees and the expert fees."

The dissolution proceeded to trial in July 2023. Christopher was thirty-eight years old then, and Abigail was thirty-three. Prior to trial, each party filed their proposed divisions of property and debts. Because of their trucking and limo rental businesses, the Fosters owned a fleet of semitrucks and vehicles, most of which Abigail thought were worth more than Christopher did. She also included a laundry list of household contents in her proposed division, again at much higher values

than Christopher. And Abigail testified that Christopher earned more than $200,000 per year, although her own expert witness set Christopher's "expected net taxable income" at $133,000, with an after-tax income of $99,081. Given his higher income, Abigail asked the court to order Christopher to pay her traditional or transitional spousal support of $2000 per month for four years, plus attorney fees and expenses totaling $14,910 and expert witness fees of $9108.

The district court found Christopher's testimony about his income more credible than Abigail's, noting that her "testimony in this regard contradicts that of her own expert." The court also found Christopher's property valuations more credible, reasoning: "Abigail said she did not want any of these assets at her proposed value. She would only accept a cash equalization payment for them. This suggests Christopher's valuations are more accurate." The court accordingly awarded Christopher most of the parties' assets at his listed values. Although Abigail received fewer assets in the court's distribution, she was also assigned fewer debts. As a result, the property division was lopsided in her favor.

To equalize the division, the court ordered Abigail to pay Christopher $11,314.99. She was also ordered to repay Christopher the $17,500 that the court found the parties "agreed would be considered in the Decree in their August 12, 2022 Temporary Matters Stipulation Agreement," meaning she owed Christopher a total of $28,814.99. As for Abigail's request for spousal support, the court awarded her transitional spousal support of $1000 per month for one year. Christopher was also ordered to pay $2000 towards Abigail's attorney fees and expenses. Her request for expert witness fees was denied. Abigail appeals.

## II.      Standard of Review

We review equitable proceedings, like dissolutions of marriage, de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Miller*, 966 N.W.2d 630, 635 (Iowa 2021). "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). The court's ruling will be disturbed "only when there has been a failure to do equity." *Id.* (citations omitted). We review an award of attorney fees for an abuse of discretion. *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993).

## III.     Analysis

### A.       Property Division

Abigail claims the district court's property division was inequitable and resulted in a "significant financial windfall" for Christopher. She challenges the court's (1) order requiring her to repay Christopher the $17,500 that she received from the temporary stipulation; (2) inclusion of two business loans; and (3) valuation of seventeen items of personal property.

In a dissolution decree, the district court is tasked with dividing "all property, except inherited property or gifts received or expected by one party, equitably between the parties." Iowa Code § 598.21(5) (2022); *see also McDermott*, 827 N.W.2d at 678. The court's division must also include marital debts. *See In re Marriage of Sullins*, 715 N.W.2d 242, 251 (Iowa 2006). "To achieve an equitable division, we apply the factors contained in section 598.21(5), keeping in mind there are no hard and fast rules governing economic issues in dissolution actions."

*McDermott*, 827 N.W.2d at 682. With these principles in mind, we turn to Abigail's challenges.

1.      *Temporary Payment.* Abigail argues that it "was wholly improper" for the district court to order her to repay the $17,500 that Christopher advanced to her as part of their temporary stipulation. She contends that because "Christopher used marital assets to pay the $17,500," the court should have only ordered her to "reimburse Christopher $8,750 from those marital funds." Although Christopher does not dispute that marital assets were used to make that payment to Abigail, he argues the "parties explicitly agreed and acknowledged that the full payment would be considered in the final decree."

It's true that the stipulated temporary order stated, "The payment *shall be taken into consideration* in determining the settlement of the final decree." (Emphasis added.) But we fail to see how taking the payment "into consideration" required Abigail to repay the entire amount to Christopher. *See In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987) (noting a court-approved stipulation "is to be construed like any other written instrument," giving force and effect to "every word, if possible," to achieve "a consistent, effective and reasonable meaning"). And we do not think it was equitable for the court to order her to do so, considering the disparity in the parties' incomes and the use of marital funds to make the payment. *See* Iowa Code § 598.21(5)(f). Because the court made an otherwise equal property division, which we find *was* equitable, we agree with Abigail that she should only be required to repay Christopher $8750. *See McDermott*, 827 N.W.2d at 682 (noting that while an equal division of assets is not required, equality is often most equitable); *In re Marriage of Duggan,* 659 N.W.2d 556, 562 (Iowa

2003) (requiring modification of a decree to "accomplish an equal division" of the couple's assets).

2.    *Business debts.*  Abigail next argues the court "erred in assessing the parties' debt allocations."  She first challenges a $25,070.56 debt to Terry's Truck and Trailer that Christopher listed on his proposed property division spreadsheet.  The court assigned that debt to Christopher, even though he testified at trial that it was paid off.  Abigail argues it is unclear "[w]hy this debt was still considered by the district court despite Christopher's direct testimony."  Christopher simply responds the "court was correct in including this debt."  We disagree.

When dividing marital property, "the court can only award assets and debts that then exist, and it must generally do so based on their value at the time of trial." *In re Marriage of Rasmussen*, No. 23-0805, 2024 WL 3688309, at *3 (Iowa Ct. App. Aug. 7, 2024).  The court did not explain why it included this satisfied debt on Christopher's side of the ledger.  *Cf. In re Marriage of Schaffer*, No. 04-0734, 2005 WL 67595, at *3 (Iowa Ct. App. Jan. 13, 2005) (giving a wife credit for proceeds from the sale of her premarital home that she used to pay down her husband's debt).  And no reason is apparent from the record.  We agree with Abigail that assigning this non-existent debt to Christopher was inequitable and modify the decree accordingly.  *See, e.g.*, *In re Marriage Bishop*, No. 02-0174, 2003 WL 1524449, at *3 (Iowa Ct. App. Mar. 26, 2003) (Vogel, J., concurring in part and dissenting in part) (stating it was unclear why any party in a dissolution should be given "a cash equivalent to a debt long since paid").

The second debt that Abigail challenges is a $113,295.72 Small Business Administration (SBA) loan that the court included in its property division calculations and ordered Christopher to pay. Abigail argues that because Christopher "assum[ed] that loan as part of his trucking company, it is inequitable to consider it a marital [debt] when the value of Christopher's business was not assessed nor was any money given for the company's value." In other words, Abigail contends the trucking company is worth more than the sum of its parts. The court rejected this argument, reasoning:

> Abigail offered no evidence to support this claim despite hiring [an expert witness] who lists business evaluations as his first area of specialization. Christopher testified the value of the businesses is the value of his assets. . . . No other testimony or evidence was presented regarding [the parties'] companies. . . .

The court concluded that "[t]o not include [the SBA] debt as marital would permit Abigail to 'double dip.'"

On our de novo review, we likewise find the record inadequate to support Abigail's position on the value of Christopher's businesses. Considering that the assets of the trucking and limo rental companies were separately valued and awarded to Christopher, we agree with the court's decision to include the SBA loan in its property division. *See In re Marriage of Johnsen*, No. 20-0779, 2021 WL 2690019, at *3 (Iowa Ct. App. June 30, 2021) (modifying property division to award one spouse all the assets of a cattle-raising operation, along with all the operation's debts).

*3.* *Miscellaneous personal property.* Finally, Abigail argues the court erred in valuing nine items of personal property and excluding eight others.[2] She does so through a chart in her appellate brief that lists each item, the court's valuation, and her requested valuation. Aside from some general property division principles at the start of her argument section, Abigail cites no authority in this portion of her brief. *See* Iowa R. App. P. 6.903(2)(a)(8)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Nor does she provide much, if any, argument about why the court's valuations or exclusions of property are incorrect.

In any event, for the nine items that Abigail claims were misvalued, we find the court's valuations—which included credibility findings in Christopher's favor—to be within the range of evidence. *See In re Marriage of Keener*, 728 N.W.2d 188, 194 (Iowa 2007) ("A trial court's valuation will not be disturbed when it is within the range of evidence."). We accordingly decline to disturb them on appeal. *See id.*; *see also In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007) (noting a property "owner is a competent witness to testify to its market value").

As for the 1951 Bentley, 2019 Lincoln Navigator, 2021 Ryker motorcycle, 2005 Kenworth, and Gen X arcade that Abigail contends were improperly excluded from the division, Christopher testified that each of those items were sold and no longer in his possession. *See In re Marriage of Kinser*, No. 11-0169, 2012

---

[2] The items that Abigail claims were improperly valued are a 1930 Lincoln, 2021 Harley, 2022 2500 Dodge Ram, 1997 Peterbilt, 2021 Can-Am ATV, zero-turn mover, snow blower, Tahiti Jet Boat, and zero gravity bed. And the items that she says were excluded are a 1951 Bentley, 2019 Lincoln Navigator, 2021 Ryker motorcycle, 2005 Kenworth, Gen X arcade, Venmo balance, wedding ring, and Tiffany necklace.

WL 3194088, at *7 (Iowa Ct. App. Aug. 8, 2012) (concluding that the court should not have included property that had been sold in its division). Abigail did not offer any evidence to the contrary, and the court generally found Christopher more credible. We defer to that credibility finding. *See Keener*, 728 N.W.2d at 193. The court also credited Christopher's testimony that he did not have Abigail's wedding ring or Tiffany necklace. So we find no error in the exclusion of these items from the court's property division.

This leaves Christopher's Venmo account balance of $5467, which was also excluded from the court's division. There was no testimony about this asset. Instead, the only evidence about the account was an unexplained and undated screenshot with Foster Limo's name at the top, the account balance, and a pending payment request from September 30, 2021. Given this lack of evidence about the account, we conclude the court did not err in excluding it from the property division.

*4.    Modification to Property Settlement*. We modify the district court's property settlement to remove the $25,070.56 debt to Terry's Truck and Trailer from Christopher's side of the ledger. This increases Christopher's net property award from $128,041.29 to $153,111.85. Abigail's net property award remains at $150,671.26. To equalize the division, Christopher owes Abigail $1220.30. But because we agree with Abigail that she should only be required to reimburse Christopher for half of the money that he advanced to her under the temporary stipulated order, we offset that amount by $8750. This means that Abigail now owes Christopher $7529.70.

**B.** **Spousal Support**

Abigail next claims the district court's transitional spousal support award of $1000 per month for one year "was insufficient in both the amount of the award and the duration." In addition to that award, she argues the court should have also ordered "a hybrid award of traditional/reimbursement spousal support" of $2000 per month for four years. We disagree.

While this court reviews spousal support awards de novo, we "afford deference to the district court for institutional and pragmatic reasons" and disturb its "determination of spousal support only when there has been a failure to do equity." *In re Marriage of Sokol*, 985 N.W.2d 177, 182 (Iowa 2023) (cleaned up). "Spousal support is not an absolute right; rather, its allowance is determined based on the particular circumstances presented in each case." *In re Marriage of Mills*, 983 N.W.2d 61, 67 (Iowa 2022). Iowa courts are "to equitably award spousal support by considering" the criteria listed in Iowa Code section 598.21A(1). *In re Marriage of Mauer*, 874 N.W.2d 103, 107 (Iowa 2016).

"In applying these statutory criteria, our precedents have recognized four forms of spousal support deemed equitable: traditional, reimbursement, rehabilitative, and transitional." *Sokol*, 985 N.W.2d at 185. Each type has a different goal, and the amount and duration of a spousal support award "should be tailored to achieve the underlying equitable purpose of the spousal support award." *Id.* While these categories are not mutually exclusive, and hybrid awards are permitted, courts are not "free to award spousal support not corresponding to any

recognized category of support." *Id.* at 186. Abigail does not qualify for either traditional or reimbursement spousal support.

Traditional spousal support is typically reserved for "long-term marriages where life patterns have been largely set and 'the earning potential of both spouses can be predicted with some reliability.'" *In re Marriage of Gust*, 858 N.W.2d 402, 410 (Iowa 2015) (citation omitted). "Generally speaking, marriage lasting twenty or more years commonly cross the durational threshold and merit serious consideration for traditional spousal support." *Id.* at 410–11. The Fosters were only married for nine years. Abigail has not identified any extraordinary circumstances that would allow us to depart from the general rule. She has a college degree and was employed for the entire marriage. *Cf. In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486–87 (Iowa 2012) (affirming award of traditional spousal support after a sixteen-year marriage when the wife's earning capacity was negligible). And when the dissolution trial was held, she was just thirty-three years old and in "very good health." *Cf. Mills*, 983 N.W.2d at 73 (affirming award of traditional spousal support where the mother suffered permanent disability during childbirth even though the marriage lasted only fourteen years).

We also find that Abigail does not fit within the category for reimbursement spousal support. "Reimbursement support may be warranted where, for example, 'a spouse contributed to the other's earning capacity' by supporting them through a degree program and where the supporting spouse 'cannot otherwise be compensated for their contributions.'" *Sokol*, 985 N.W.2d at 185 (quoting *In re Marriage of Pazhoor*, 971 N.W.2d 530, 544 (Iowa 2022)). While Abigail helped Christopher with the bookkeeping for his businesses, the record does not show

that she made any economic sacrifices to do so. *See Pazhoor*, 971 N.W.2d at 544 ("Reimbursement alimony 'is predicated upon economic sacrifices made by one spouse during the marriage that directly enhance the future earning capacity of the other.'" (citation omitted)). To the extent that Abigail contributed to Christopher's earning capacity, we find that she was adequately compensated for that contribution through the equal division of the marital property. *See id.* at 545.

For these reasons, we deny Abigail's request for a hybrid award of traditional and reimbursement spousal support.

### C.    Trial Attorney and Expert Fees

The district court has "broad discretion" in determining whether to award attorney fees. *In re Marriage of Geil*, 509 N.W.2d 738, 743 (Iowa 1993). "The test is whether the fee is reasonable and based on the parties' respective abilities to pay." *Id.* The district court may also consider any expert fees owed in its attorney fees determination. *Schenkelberg*, 824 N.W.2d at 488.

Abigail claims the district court should have ordered Christopher to pay all her trial attorney fees, which totaled $14,910, and her expert witness fee of $9108. She argues that Christopher's income is nearly double hers and he was "left with nearly all of the parties' assets," which will "continue to generate income for him and his businesses." While Christopher does earn more than Abigail, he was saddled with all the marital debt, plus two credit cards in his name that totaled more than $30,000.[3] He also testified that he was "maxed out" on loans from the bank. In contrast, Abigail has a steady income, less debt, and more money in savings.

---

[3] This credit card debt was assigned to Christopher but not included in the district court's property division calculations.

With this record, we cannot say the court abused its discretion in limiting Abigail's trial attorney fee award and denying her request for expert witness fees.

### D. Appellate Attorney Fees

This leaves us with each party's claim for appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We must consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). Considering these factors, we order each party to pay their own appellate attorney fees.

## IV. Conclusion

We modify the dissolution decree to reduce Abigail's property settlement payment to Christopher to $7529.70. We deny Abigail's request for a hybrid award of traditional and reimbursement spousal support, affirm the district court's assessment of trial attorney fees and denial of Abigail's expert witness fees, and order each party to be responsible for their own appellate attorney fees. The costs of the appeal are assessed equally between the parties.

**AFFIRMED AS MODIFIED.**